UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| SCOTT FRANKLIN BUTLER,<br><br>        Plaintiff,<br><br>v.<br><br>ESSAM AL TAMIMI,<br><br>        Defendant. | Case No. _____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Scott Franklin Butler ("Butler" or "Plaintiff"), for his complaint against Essam Al Tamimi ("Tamimi" or "Defendant"), Defendant, hereby alleges as follows:

**INTRODUCTION**

1. Butler, a former Green Beret who works with U.S.-based companies on anti-counterfeiting enforcement in Bahrain, Kuwait, Oman, Qatar, Saudi Arabia, and the United Arab Emirates, seeks damages arising out of Defendant's wholesale and repeated abuse of process and malicious prosecution against Plaintiff. Defendant's pattern of tortious conduct, detailed below, began with having Butler unjustly arrested at the Dubai airport and his passport confiscated, effectively stranding Butler in Dubai for three years.

2. The arrest stemmed from the filing by Tamimi of a vindictive and unjustified criminal complaint against Butler in 2010. That complaint, which was rejected by the Dubai prosecutor, refiled and rejected again, and then dismissed two more times on appeal, was followed by a civil action against Butler, based largely on the same

facts. That action was similarly dismissed. In all, Tamimi prosecuted a total of five separate legal proceedings against Butler, all of which were ultimately dismissed in Butler's favor.

3. Even though at each turn Butler has been proven innocent of all charges against him, Defendant's specious conduct continues unabated. Tamimi has, in the last few months, filed two more actions, a civil action and an arbitration against Butler and/or his company, predicated—again—on largely the same allegations that were already dismissed in the preceding five criminal and civil actions. Tamimi's conduct continues to harm Butler, leaving Butler no choice but to bring this action to put an end to four years of unyielding abuse.

## JURISDICTION AND VENUE

4. Butler is a citizen of Illinois.

5. Defendant is a citizen of the United Arab Emirates and, upon information and belief, maintains a residence at 115 ½ Broadway Ave. North, Apt. 4, Rochester, MN 55906 (the "115 ½ Address").

6. This Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332. There is complete diversity of citizenship and, as set forth in further detail herein, the amount in controversy exceeds $75,000 exclusive of interest and costs.

7. Pursuant to 28 U.S.C. § 1391, venue is proper in this judicial district because it is where Defendant resides and is subject to personal jurisdiction.

## STATEMENT OF FACTS

*Background*

8.    Butler acts as the Chief Executive Officer and majority owner of Arabian Anti-Piracy Alliance ("AAA"), a service provider in the business of copyright and trademark protection in the Gulf Cooperation Council Countries (the "GCC"), which consists of Bahrain, Kuwait, Oman, Qatar, Saudi Arabia, and the United Arab Emirates ("UAE").  Since its inception, AAA has acquired a clientele of major international companies, such as Microsoft, Sony, Energizer, Samsung, Panasonic, Oxford, Cambridge, Canon, Nike, Christian Dior, Luis Vuitton, Nivea, Cartier, Abu Dhabi Media, and Paramount Pictures, among others.

9.    From 1996 to September 2001, Butler was the general manager of the Motion Picture Association, Middle East, based in Dubai.

10.   From May 1986 to August 1996, Butler served as an officer with the United States Army Special Forces (the Green Berets), where he continuously held command positions for ten years.  Butler completed three combat tours of duty and served with distinction.  During his service, Butler was regularly the top graduate at demanding Special Forces, Army Ranger, and other specialized schools; was awarded numerous decorations; and was ranked as one of the top commanders in the 5th Special Forces Group.

11.   Defendant is a senior partner at Al Tamimi & Co., a Dubai law firm located at the Dubai International Financial Center, 6th Floor, Building 4 East, Sheikh Zayed

Road, P.O. Box 9275, Dubai, United Arab Emirates. The stated goal of Defendant's law firm is "regional domination" of the Middle East markets.

12. Since December 2011, Tamimi has been the owner and registrant of a vehicle registered in Minnesota at the 115 ½ Address. Tamimi is also in possession of a Minnesota driver's license identifying the 115 ½ Address as his residence.

13. Tamimi also maintains a bank account in Idaho, which also lists the 115 ½ Address as his residence.

14. In 2012, Tamimi maintained a residence at 23 2nd Street SW, Rochester, MN, 55902.

15. On or about July 2, 2000, Tamimi and Butler entered into a Shareholders Agreement (the "Agreement") establishing a joint venture to form AAA.

16. Under the Agreement, Tamimi and Butler are each shareholders of AAA.

17. In or around 2009, Tamimi and Butler agreed to terminate their joint venture and commenced negotiations to transfer to Tamimi a "fair and amicable" value of his equity interest, notwithstanding Defendant's failure to contribute his requisite share of capital to the venture. Those negotiations soured into a commercial dispute, the subject matter of which is not part of this lawsuit.

*The Malicious Actions*

18. In 2010, Tamimi filed a criminal complaint against Butler for criminal "Breach of Trust" (the "First Action") in Dubai.

19. Upon information and belief, the First Action was filed by Tamimi solely to harass and cause injury to Butler.

4

20. In connection with the First Action, on June 11, 2010, Butler was arrested at the Dubai airport while preparing to travel to Saudi Arabia. The purpose of Butler's travel was to participate in bilateral meetings between the United States Government and Saudi Arabia concerning an improved intellectual property rights regime in Saudi Arabia.

21. The First Action was transferred to the Dubai public prosecutor on or around July 15, 2010, and was assigned to an independent expert to assess the claims asserted by Defendant.

22. On or around April 21, 2011, the independent expert produced a 600-page report upon which the public prosecutor relied to decline to prosecute Tamimi's claims against Butler.

23. Notwithstanding the independent expert's report absolving Butler of the accusations, on or around June 26, 2011, Butler was informed that, at Tamimi's insistence, a committee was established by the Dubai public prosecutor (the "Committee").

24. On information and belief, the Committee directed the public prosecutor to transfer the case to the Court of First Instance for criminal prosecution (the "Second Action"). Neither Butler nor his counsel were ever allowed to meet with the Committee, nor were they permitted to provide any legal submissions to rebut Tamimi's already rejected and baseless claims.

25. On or around December 28, 2011, the Court of First Instance appointed a second independent expert committee (the "Second Committee") to assess Tamimi's claims against Butler. As part of that assessment, the Second Committee verbally stated

to Butler that it was convinced that Tamimi's actions were motivated by a desire to blackmail Butler in connection with the commercial dispute between Tamimi and Butler.

26. On June 20, 2012, following six months of extensive due diligence, the Second Committee's report concluded that Tamimi's claims were baseless. The Second Committee's report resulted in the dismissal by Court of First Instance of all claims against Butler in the Second Action.

27. On or about October 16, 2012, Tamimi appealed the decision of the Court of First Instance Court to the Court of Appeal (the "Third Action"). The Third Action was dismissed in December of 2013 in Butler's favor.

28. In or around February of 2013, Tamimi filed yet another appeal (the "Fourth Action"), this time to the Court of Cassation, which is UAE's highest court. The Fourth Action was dismissed the same month it was filed.

29. Throughout this period—from 2010 through 2013—Butler's passport remained in the hands of the UAE authorities. Moreover, in November 2010, Tamimi, who served as Butler's visa sponsor, refused to renew Butler's UAE resident visa.

30. In February of 2013, the same month Tamimi appealed the dismissal of his criminal case, Tamimi also commenced a civil action seeking the involuntary liquidation of AAA (the "Fifth Action"), based on the same facts alleged in the criminal actions. The Fifth Action was dismissed in August of 2014.

31. Undaunted, in August of 2014, Tamimi commenced arbitration proceedings (the "Sixth Action") before the GCC Arbitration Center seeking the involuntary liquidation of AAA—the same relief previously rejected by the Dubai Court.

6

Notwithstanding the fact that Tamimi has already lost before the UAE Courts on all the legal issues he is now raising in the Sixth Case, the arbitration remains pending.

32.  Continuing his pattern of relentless litigation, Tamimi commenced yet another action dated November 12, 2014, a civil action seeking sequestration of AAA (the "Seventh Action").

33.  Despite the repeated dismissal of Tamimi's claims in Butler's favor, the UAE Courts and officials have proven unwilling to put a full and final stop Tamimi's campaign of malicious prosecution and abuse of process against Butler.

## CLAIMS FOR RELIEF

### COUNT ONE – MALICIOUS PROSECUTION [Minnesota Common Law]

34.  Plaintiff realleges and incorporates by reference all of the preceding paragraphs of this Complaint.

35.  The criminal, civil, and arbitral complaints against Butler and/or AAA were filed by or at the direction of Tamimi.

36.  The First, Second, Third, Fourth and Fifth Actions filed by Tamimi against Butler were each dismissed in Butler's favor.

37.  Tamimi did not have probable cause to file any of his claims against Butler. Tamimi knew or reasonably should have known his claims against Butler were meritless. Tamimi perpetuated the claims after he knew or should have known that his claims had no merit.

38.  In initiating and perpetuating the First, Second, Third, Fourth, Fifth, Sixth and Seventh Actions (collectively, the "Tamimi Actions") against Butler, Tamimi acted

7

primarily for a purpose other than succeeding on the merits of his claims. That purpose includes, without limitation, actual hostility and ill will toward Butler, and a desire by Tamimi to hurt Butler despite knowing the specious nature of his claims against Butler.

39. By initiating and continuing the Tamimi Actions, Defendant acted with oppression, fraud, and malice, including without limitation, acting with intent to cause injury to Butler, and engaging in malicious conduct with a willful and conscious disregard for Butler's rights.

40. As a direct and proximate cause of Tamimi's conduct, Butler was forced to expend, and continues to expend, significant time and money in defending the meritless claims. Further, Butler has suffered and continues to suffer harm to his reputation, business interests and emotional well-being. These damages have resulted in harm to Butler in an amount to be proven at trial but no less than $36,069,716, as further explained below.

### COUNT TWO – ABUSE OF PROCESS [Minnesota Common Law]

41. Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint.

42. In initiating and perpetuating the Tamimi Actions against Butler, Tamimi acted primarily for a purpose other than succeeding on the merits of his claims. That purpose includes, but is not limited to, actual hostility or ill will toward Butler.

43. The Tamimi Actions were filed by or at the direction of Tamimi who used the Tamimi Actions to achieve the ulterior purpose set forth above.

44. As a direct and proximate cause of Tamimi's conduct, Butler was forced to expend, and continues to expend, significant time and money in defending the meritless claims against him. Further, Butler has suffered and continues to suffer harm to his reputation, business interests and emotional well-being. These damages have resulted in harm to Butler in an amount over the jurisdictional requirements of this Court. Tamimi's conduct was a substantial factor and proximate cause in bringing about Butler's harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Butler prays for relief as follows:

1. For special damages including attorney's fees and other costs in defending the Tamimi actions, damage to reputation, harm to business interests and emotional well-being in an amount to be proven at trial but in excess of $36 million;

2. For general damages according to proof at trial;

3. For attorney's fees and costs of suit;

4. For punitive damages in such amount as the Court may deem appropriate to penalize Defendant for his intentional and malicious misconduct;

5. For prejudgment interest; and

6. For such other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all his claims against Defendant.

Dated: January 14, 2015                    Respectfully submitted,

**GUSTAFSON GLUEK PLLC**

By: */s/Daniel C. Hedlund*
Daniel E. Gustafson (#202241)
Daniel C. Hedlund (#258337)
Michelle J. Looby (#0388166)
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
T: (612) 333-8844
F: (612) 339-622
E-mail: dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com

**BAKER & HOSTETLER LLP**

Oren Warshavsky (*pro hac vice forthcoming*)
Gonzalo Zeballos (*pro hac vice forthcoming*)
Marc Skapof (*pro hac vice forthcoming*)
Yulia Fradkin (*pro hac vice forthcoming*)
45 Rockefeller Plaza
New York, NY 10111-0100
T: (212) 589-4282
F: (212) 589-4201
E-mail: owarshavsky@bakerlaw.com
gzeballos@bakerlaw.com
mskapof@bakerlaw.com
yfradkin@bakerlaw.com

*Attorneys for Plaintiff*